**MATERN LAW GROUP, PC**
MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
MATTHEW W. GORDON (SBN 267971)
mgordon@maternlawgroup.com
SCOTT A. BROOKS (SBN 160115)
sbrooks@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

**ALTSHULER BERZON LLP**
JAMES M. FINBERG (SBN 114850)
jfinberg@altshulerberzon.com
EILEEN B. GOLDSMITH (SBN 218029)
egoldsmith@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Class Counsel and Attorneys for
Plaintiff HOWARD FAN,
individually, and on behalf of others
similarly situated

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD FAN, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DELTA AIRLINES, INC., a Delaware corporation,<br><br>　　　　Defendant. | No. 2:19-cv-04599-SVW-SS<br><br>[Assigned to Hon. Stephen V. Wilson, Courtroom 10A; Magistrate Judge: Hon. Suzanne H. Segal]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:　　　March 9, 2020<br>Time:　　　1:30 p.m.<br>Ctrm:　　　10A<br>Judge:　　　Hon. Stephen V. Wilson |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 9, 2020 at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 10A of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, Plaintiff Howard Fan will, and hereby does, move this Court, pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure, for an order awarding attorneys' fees in the amount of $1,166,666.67 and Class Counsel's litigation costs in the amount of $22,602.26.

This motion will be made on the grounds that pursuant to the express terms of the Stipulation of Settlement ("Settlement" or "Stipulation"), California Labor Code §§ 218.5 and 1194 and California Code of Civil Procedure § 1021.5, Plaintiff is entitled to recover his reasonable attorney's fees, not to exceed $1,166,666.67, and his reasonable litigation costs which were estimated to be no more than $25,000.00 and are in fact $22,602.26, incurred in the prosecution of this action which resulted in a substantial monetary settlement of $3.5 million for the benefit of a Class of 3,385 persons.

This motion will be based on this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Matthew J. Matern, James M. Finberg and Jeff Moore, the documents and records on file in this matter, and such additional arguments, authorities, evidence, and other matters as may be presented by the parties hereafter.

///

///

///

Pursuant to the Parties' Stipulation, Delta Airlines, Inc. ("Delta") does not oppose this motion.  Dkt. 39-3, ¶ 5.4.

DATED:  January 27, 2020

Respectfully submitted,

**MATERN LAW GROUP, PC**
Matthew J. Matern
Matthew W. Gordon
Scott A. Brooks

**ALTSHULER BERZON LLP**
James M. Finberg
Eileen B. Goldsmith

By: */s/ Matthew J. Matern*
    Matthew J. Matern

Class Counsel and Attorneys for
plaintiff HOWARD FAN

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION…………………………………………………………...1

II.   STATEMENT OF FACTS……………………………………………………1

    A. Procedural History.........................................................................................1

    B.  Discovery and Investigation..........................................................................2

    C.  Settlement Negotiations. ...............................................................................3

    D. Preliminary Approval and Notice to the Class...............................................3

III.  ARGUMENT………………………………………………………………..3

    A. Class Counsel's Fee Application Is Governed By California
        Law. ...............................................................................................................3

    B.  Class Counsel Is Entitled To Reasonable Attorneys' Fees And
        Costs Under the California Labor Code And The Private
        Attorney General Act. ...................................................................................4

        1.  Class Counsel is Entitled to Attorneys' Fees under the California
           Labor Code.........................................................................................4

        2.  Class Counsel is Entitled to Attorneys' Fees under California's
           Private Attorney General Statute. ......................................................5

    C.  Class Counsel's Requested Fee Award Is Reasonable Under
        the Percentage Of the Fund Method...............................................................6

        1.  The Percentage Should Be Calculated Based Upon the Total
           Settlement Fund. ................................................................................7

        2.   An Upward Adjustment of the 25% Benchmark is Justified...........8

           a.     The Result Obtained for the Class...............................9

           b.     The Effort Expended by Class Counsel. ....................10

           c.     The Experience and Skill of Class Counsel. ..............11

           d.     The Complexity of the Issues....................................12

           e.     The Risk of Non-Payment. ........................................13

           f.     The Reaction of the Class. .........................................14

g.      Comparison with the Lodestar...................................15

D. Class Counsel's Requested Fee Award Is Reasonable Based
Upon A Lodestar Cross-Check. ..................................................16

1.  Class Counsel's Hourly Rates Are Reasonable. ...........................17

2.  Class Counsel's Hours Are Reasonable...........................................18

3.  Application of a Positive Multiplier Is Appropriate. .....................20

E.  Class Counsel's Request For Reimbursement Of Costs Is
Reasonable.................................................................................21

F.  Delta Does Not Oppose This Motion..........................................22

IV.   CONCLUSION……………………………………………………22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ......................................................9, 10, 11, 14, 15, 16

*Blackwell v. Foley*,
   724 F. Supp. 2d 1068 (N.D. Cal. 2010) ........................................................................19

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .........................................................................................................7

*Bouman v. Block*,
   940 F.2d 1211 (9th Cir. 1991) .......................................................................................18

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) .........................................................................................17

*Clausen v. M/V New Carissa*,
   339 F.3d 1049 (9th Cir. 2003) .......................................................................................21

*Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ..........................................................................................16

*Craft v. County of San Bernardino*,
   624 F.Supp.2d 1113 (C.D. Cal. 2008) .............................................................................9

*D'Emanuele v. Montgomery Ward & Co.*,
   904 F.2d 1379 (9th Cir. 1990) .......................................................................................20

*Espinoza v. Domino's Pizza, LLC*,
   No. EDCV-07-1601-VAP(OPx), 2012 WL 5462550 (C.D. Cal. Nov. 7, 2012)...........3

*Fernandez v. Victoria Secret Stores, LLC*,
   No. CV-06-04149-MMM (SHx), 2008 WL 8150856 (C.D. Cal. Jul. 21, 2008)………
   ...................................................................................................................8, 9, 10, 15, 16

*Fischel v. Equitable Life Assur. Society of U.S.*,
   307 F.3d 997 (9th Cir. 2002) .........................................................................................17

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) .......................................................................................18

*Guam v. Soc'y of Obstetricians & Gynecologists v. Ada*,
  100 F.3d 691 (9th Cir.1996) ...................................................................19

*Hensley v. Eckerhart*,
  461 U.S. 424, (1983)......................................................................... 9, 18

*Hopkins v. Stryker Sales Corp.*,
  No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ................. 12, 15

*In re Equity Funding Corp. Sec. Litig.*,
  438 F.Supp. 1303 (N.D. Cal. 1977) .........................................................11

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. Jun. 10, 2005)......................................9, 13, 14

*In re Immune Response Sec. Litig.*,
  497 F.Supp.2d 1166 (S.D. Cal. 2007)........................................................16

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...............................................................8, 14

*In re Omnivision Tech., Inc.*,
  559 F.Supp.2d 1036 (N.D. Cal. 2008) ......................................................15

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...................................................................7

*In re Pacific Enterprises Security Litigation*,
  47 F.3d 373 (9th Cir. 1995) ....................................................................8

*In re Prudential Sec. Inc. Ltd. P'ships. Litig.*,
  985 F.Supp. 410 (S.D. N.Y. 1997) ...........................................................14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .............................................................14, 17

*Jordan v. Multnomah County*,
  815 F.2d 1258 (9th Cir. 1987) ................................................................18

*Mangold v. Cal. Pub. Utils. Comm'n*,
  67 F.3d 1470 (9th Cir. 1995) ...................................................................3

*McGrath v. County of Nevada*,
  67 F.3d 248 (9th Cir.1995) ....................................................................16

*Moore v. Jas. H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) ........................................................................ 18

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ..................................................................... 19

*Parkinson v. Hyundai Motor Am.*,
    796 F.Supp.2d 1160 (C.D.Cal.2010) ..................................................... 15, 17

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ......................................................................... 8

*Perkins v. Mobile Housing Bd.*,
    847 F.2d 735 (11th Cir. 1988) ..................................................................... 19

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .................................................................... 3, 7

*Rawlings v. Prudential-Bache Properties, Inc.*,
    9 F.3d 513 (6th Cir. 1993) ............................................................................ 4

*Rodriguez v. County of Los Angeles*,
    96 F.Supp.3d 1012 (C.D. Cal. 2014) ......................................................... 18

*Ruiz v. JCP Logistics, Inc.*,
    No. SACV-13-1908-JLS, 2016 WL 6156212 (C.D. Cal. Aug. 12, 2016) ................... 8

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..................................................................... 8

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ....................................................................... 21

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ............................................................... 19, 21

*Thieriot v. Celtic Ins. Co.*,
    No. C-10-04462-LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ...................... 14

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ....................................................................... 18

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (2002) ..................................................... 4, 7, 8, 9, 14, 15

**State Cases**

*Chavez v. Netflix, Inc.*,
  162 Cal. App. 4th 43 (2008) ................................................................20

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 4th 663 (2006) ...............................................................6

*Consumer Privacy Cases*,
  175 Cal. App. 4th 545 (2009) .............................................................17

*Flannery v. California Highway Patrol*,
  61 Cal. App. 4th 629 (1998) ...............................................................20

*Graham v. DaimlerChrysler Corp.*,
  34 Cal. 4th 553 (2004) ...........................................................5, 14, 20

*Greene v. Dillingham Construction N.A., Inc.*,
  101 Cal. App. 4th 418 (2002) .............................................................21

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ..........................................................16, 20, 21

*Laffitte v. Robert Half Int'l Inc.*,
  1 Cal. 5th 480 (2016) ...............................................3, 4, 6, 8, 15, 16

*Lealao v. Beneficial Cal., Inc.*,
  82 Cal. App. 4th 19 (2000) ..............................................................4, 20

*Mardirossian & Assocs., Inc. v. Ersoff*,
  153 Cal. App. 4th 257 (2007) .............................................................16

*MBNA American Bank, N.A. v. Gorman*,
  147 Cal. App. 4th 1 (2006) .................................................................17

*Moore v. Indian Spring Channel Gold Mining Co.*,
  37 Cal. App. 370 (1918) ........................................................................5

*Murphy v. Kenneth Cole Productions, Inc.*,
  40 Cal. 4th 1094 (2007) ...................................................................6, 12

*PLCM Group, Inc. v. Drexler*,
  22 Cal. 4th 1084 (2000) ......................................................................16

*Press v. Lucky Stores*,
   34 Cal. 3d 311 (1983) ................................................................. 5

*Ramos v. Countrywide Home Loans, Inc.*,
   82 Cal. App. 4th 615 (2000) ...................................................... 17

*Ryan v. California Interscholastic Fed'n*,
   94 Cal. App. 4th 1033 (2001) ...................................................... 6

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) ............................................................ 7, 17

*Steiny & Co. v. California Electric Supply Co.*,
   79 Cal. App. 4th 285 (2000) ...................................................... 16

*Weeks v. Baker & McKenzie*,
   63 Cal. App. 4th 1128 (1998) ..................................................... 20

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ............................................... 3, 16, 20

**State Statutes**

Bus. and Prof. § 17200 .............................................................. 2

California Labor Code § 2699 ........................................................ 2

California Labor Code §§ 1194 and 2802 ........................................... 22

California Code of Civil Procedure § 1021.5 ................................ 2, 1, 4, 5, 6

California Labor Code §§ 218.5 and 1194 ................................... 2, 1, 4, 5

California Labor Code § 1194(a) ................................................ 4, 5

**Federal Rules**

Federal Rules of Civil Procedure. 30(b)(6) ...................................... 2

Federal Rules of Civil Procedure  23(h) and 54(d) .......................... 2, 1, 3

**Other Authorities**

*Ingalls v. Hallmark Mktg. Corp.*, No. 08-CV-4342-VBF (E),
   2009 U.S. Dist. LEXIS 131078 (C.D. Cal. Oct. 16, 2009) ......................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure, Plaintiff Howard Fan requests an order awarding attorney's fees to Class Counsel, Matern Law Group, PC ("MLG") and Altshuler Berzon LLP ("AB") in the amount of $1,166,666.67 and litigation costs in the amount of $22,602.26.

Plaintiff is entitled to recover reasonable attorney's fees under California Labor Code §§ 218.5, 1194, 2699(g)(1), Code of Civil Procedure § 1021.5, and the common fund doctrine. The requested fees are reasonable as a percentage of the common fund, representing 33 1/3% of the non-reversionary settlement fund. The amount of attorney's fees requested is also reasonable based upon a cross-check of MLG and AB's respective lodestars of $130,849.00 and $331,525.50, which include 178.40 and 371.2 attorney hours respectively, billed at customary hourly rates which, taken together show that the requested fee award of $1,166,666.67 and Class Counsel's costs of $22,602.26 are also reasonable and were necessarily incurred.

Accordingly, Plaintiff respectfully requests that the Court grant this motion.

## II.   STATEMENT OF FACTS

### A.   Procedural History

This action was filed on March 22, 2019 in the Northern District of California. Dkt. 1. On May 24, 2019, the case was transferred to the Central District of California. Dkt. 13. The complaint alleged claims on behalf of a statewide class of non-exempt Delta employees for failure to calculate overtime properly arising from shift differential pay, Shared Rewards payments, profit-sharing payments, and the fair market value of pass travel privileges and Travel Companion Passes (which Plaintiff alleged was a form of in-kind compensation that Delta treats as taxable income to the employee). Dkt. 1 at pp. 2-3. Plaintiff also alleged related derivative claims under the California Labor Code and Unfair Competition Law, which include claims for failure to timely pay wages,

failure to furnish accurate, itemized wage statements, failure to maintain required records, failure to pay all wages due to discharged and quitting employees, unfair and unlawful business practices (Cal. Code Bus. and Prof. § 17200 et seq.), and civil penalties under California's Labor Code Private Attorneys General Act of 2004 ("PAGA") (Cal. Labor Code § 2699 et seq.). Dkt. 1.

**B.      Discovery and Investigation**

The deadline for Plaintiff's motion for class certification was September 23, 2019. Thus, Plaintiff's counsel engaged in substantial discovery and investigation of his claims and Delta's defenses both in preparation for class certification and the mediation. Declaration of James M. Finberg ("JMF Decl.") ¶¶ 17-26; Declaration of Matthew J. Matern ("MJM Decl.") ¶¶ 5-6. Plaintiff served Requests for Production and obtained documents from Delta including the policy materials for shift differential pay, Delta's Shared Rewards program, profit-sharing plan, and travel passes. MJM Decl. ¶¶ 5-6.

In addition to Plaintiff's own time, payroll and personnel records, Plaintiff obtained from Delta a 10% sample of time and payroll data representing hundreds of thousands of data points for the class members and included compensation data for shift differentials, meal premium penalties, insurance, award travel, non-revenue travel, Shared Rewards, customer incentives, cargo incentives, cash awards and profit sharing. MJM Decl. ¶ 6. Plaintiff also served and received responses to interrogatories. MJM Decl. ¶ 6. Plaintiff's counsel deposed three witnesses whom Delta designated as knowledgeable about topics in the case pursuant to Fed.R.Civ.P. 30(b)(6). JMF Decl. ¶¶ 22; MJM Decl. ¶ 6. Delta deposed Plaintiff Fan and served requests for production and Plaintiff Fan produced hundreds of pages including records of his award and non-revenue travel.

Plaintiff retained an expert to analyze the class member time and payroll records for observed rates of the various Labor Code violations and to provide a damages analysis used in mediation. MJM Decl. ¶ 8.

### C.   Settlement Negotiations.

On September 16, 2019, the parties participated in a mediation with Mark Rudy, a well-respected and experienced mediator in California wage and hour cases. MJM Decl. ¶ 9. At the end of the full-day session, the Parties were able to agree to the basic terms of the settlement in writing. Id. The Parties then spent substantial time over the following two months negotiating and finalizing the terms of a detailed settlement agreement. MJM Decl ¶ 9.

### D.   Preliminary Approval and Notice to the Class.

On November 14, 2019, the Court granted preliminary approval of the Settlement and directed that notice be sent to the Class Members. Dkt. 41. The deadline for Class members to submit objections or to opt out of the Settlement is February 10, 2020. Dkt. 41.

## III.   ARGUMENT

### A.   Class Counsel's Fee Application Is Governed By California Law.

Rule 23(h) of the Federal Rules of Civil Procedure provides that, in a certified class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). Where, as here, state law claims predominate, state law governs the right to an award of attorney's fees and the method of calculating the fees. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Under both Ninth Circuit and California precedent, a district court has the discretion to award attorney's fees in common fund cases under either the percentage of recovery method or the lodestar method. *Espinoza v. Domino's Pizza, LLC*, No. EDCV-07-1601-VAP(OPx), 2012 WL 5462550, at *2 (C.D. Cal. Nov. 7, 2012); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001).

"The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of the plaintiffs' recovery." *Laffitte*, 1 Cal. 5th at

489. The lodestar method calculates the fee "'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.'" *Id*., citing *Lealao v. Beneficial Cal., Inc*., 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, " 'it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.' " *Id*.

The recognized advantages of the percentage of the fund method include "relative ease of calculation, alignment of incentives between class counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Laffitte*, 1 Cal. 5th at 503. The Ninth Circuit has encouraged district courts to conduct a lodestar cross-check on a percentage fee award. *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1050 (2002). As noted by the California Supreme Court, "'[t]he lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved.'" *Laffitte*, 1 Cal. 5th at 504 (citing *Rawlings v. Prudential-Bache Properties, Inc*., 9 F.3d 513, 516 (6th Cir. 1993)).

**B.      Class Counsel Is Entitled To Reasonable Attorneys' Fees And Costs Under the California Labor Code And The Private Attorney General Act.**

Class Counsel is entitled to statutory recovery of fees and costs pursuant to California Labor Code §§ 218.5, 1194, 2699(g)(1) and Code of Civil Procedure § 1021.5.

**1.      Class Counsel is Entitled to Attorneys' Fees under the California Labor Code.**

Class Counsel is entitled to recover attorney's fees and costs under Labor Code § 1194(a), which provides that:

> [A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Because this litigation culminated in a settlement that provides for a recovery of unpaid wages, including unpaid overtime compensation and unpaid expense reimbursements for more than 3,000 employees in California, Plaintiff is entitled to recover reasonable attorneys' fees under California Labor Code § 1194(a). Class Counsel is likewise entitled to recover reasonable attorneys' fees and costs under Labor Code section 218.5 for the claims for "the nonpayment of wages."

### 2.      Class Counsel is Entitled to Attorneys' Fees under California's Private Attorney General Statute.

Plaintiff is also entitled to a fee award under California's private attorney general statute, Code of Civil Procedure § 1021.5. An award of attorney fees is proper under Section 1021.5 if "(1) plaintiffs' action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons' and (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate.' " *Press v. Lucky Stores*, 34 Cal. 3d 311, 317-18 (1983). The fundamental objective of the statute is "to encourage suits enforcing public policies by providing substantial attorneys' fees to successful litigants in such cases." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004).

This action resulted in the enforcement of important rights affecting the public interest, as Plaintiffs sought to enforce Class Members' rights to recover statutory wages arising out of Delta's failure to pay all overtime compensation due, among other things. *Moore v. Indian Spring Channel Gold Mining Co.*, 37 Cal. App. 370, 379-380 (1918) (recognizing that the "[d]elay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and, in many

cases may make the wage earner a charge upon the public"); *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1113 (2007) (noting that "health and safety considerations (rather than purely economic injuries) are what motivated the IWC to adopt mandatory meal and rest periods in the first place").

This action also conferred a significant benefit on a large class of persons covered by the Settlement. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 703 (2006) (holding that "[a]ttorney fees may be awarded under Code of Civil Procedure section 1021.5 for consumer class action suits benefiting a large number of people"). Here, the class size is comprised of 3,385 Class Members. Declaration of Jeff Moore ¶ 2. The Settlement provides a significant monetary benefit, in that it permits all persons who worked for Delta in non-exempt positions in California (except flight attendants and pilots) during the Class Period to obtain compensation for unpaid wages as well as their portion of the PAGA penalties. Dkt. 39-3 at ¶¶ 2.31, 5.2.1.

Finally, the necessity and financial burden of private enforcement render an award appropriate. Without the incentive of an attorney's fee award, Plaintiff could not have afforded to hire counsel to pursue this case, as the cost of litigating this matter far outweighed Plaintiff's potential recovery. *Ryan v. California Interscholastic Fed'n*, 94 Cal. App. 4th 1033, 1044 (2001) ("As to the necessity and financial burden of private enforcement, an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter").

Thus, an award of reasonable attorney's fees under Cal. Code of Civil Procedure § 1021.5 is appropriate in this case.

### C. Class Counsel's Requested Fee Award Is Reasonable Under the Percentage Of the Fund Method.

In this case, the Settlement resulted in the creation of a common fund from which all Class Members are to be paid. As a result, Plaintiff is entitled to recover attorney's fees based upon a percentage of that fund. *Laffitte*, 1 Cal. 5th at 506 (approving fee equal to

33 1/3% of the common fund). Plaintiff's request for attorney's fees in the amount of $1,166,666.67, which represents 33 1/3% of the total settlement fund of $3.5 million, is reasonable and justified.

The California Supreme Court has held that "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund." *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977) (internal citations omitted).

### 1. The Percentage Should Be Calculated Based Upon the Total Settlement Fund.

Courts have concluded that it is proper to calculate the fee award as a percentage of the *total* settlement fund, including attorney's fees, litigation costs, and administrative costs. *Powers*, 229 F.3d at 1258 (rejecting objector's argument that a fee award in a securities settlement should be based on "net recovery," which does not include "expert fees, litigation costs, and other expenses"); *Vizcaino*, 290 F.3d at 1052 (district court did not abuse its discretion in approving class counsel's fee application based upon a percentage of the total settlement fund, including attorney's fees, costs, and incentive awards); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses"); *see also* Manual for Complex Litig., 4th ed., § 21.7 (advocating use of the total settlement fund, including attorney's fees and expenses, "to measure whether the portion allocated to the class and to attorney fees is reasonable"). The rationale for this method of calculation is that "a fee awarded against the entire judgment will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-80 (1980).

Here, the amount of fees requested, 33 1/3% of the total settlement fund, is well within the range of percentages generally awarded by courts in class actions resulting in the creation of a common fund. *See, e.g. Laffitte,* 1 Cal.5th at 506. While there is no specific benchmark under California law, California superior courts have frequently awarded percentage fees of 33.33% or more in common fund cases litigated by Class Counsel involving wage and hour claims like this case. MJM Decl. ¶ 26; see also, e.g., Order Granting Plaintiffs' Motion for Attorneys' Fees, Costs and Class Representative Service Payments at ¶ 7 ("Therefore, whether analyzed on a lodestar/multiplier basis or as a percentage of the common fund, the attorneys' fees requested by Class Counsel in the amount of $1,426,667.00 are fair and reasonable."), Exh. C to JMF Decl.

**2.      An Upward Adjustment of the 25% Benchmark is Justified.**

Even under the Ninth Circuit's 25 percent "benchmark" for attorney fee awards, an upward adjustment is appropriate when justified based on "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1047-48 (affirming 28% common fund fee); *see also, Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995).  However, courts in the Ninth Circuit have regularly awarded attorney's fees ranging from 30 to 40 percent in common fund cases. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of the total recovery); *Corral v. Lifecare Solutions Inc.*, No. CV12-10074-FMO (PJWx), Dkt. No. 55 (C.D. Cal. Nov. 6, 2014) (approving requested fee award of 33 1/3%); *Ruiz v. JCP Logistics, Inc.*, No. SACV-13-1908-JLS, 2016 WL 6156212, *10 (C.D. Cal. Aug. 12, 2016) (awarding attorney's fees of 30% of the gross settlement fund); *Ingalls v. Hallmark Mktg. Corp.*, No. 08-CV-4342-VBF (E), 2009 U.S. Dist. LEXIS 131078 (C.D. Cal. Oct. 16, 2009) (wage and hour class action awarding fees equal to 33 1/3%); *Fernandez v. Victoria Secret Stores, LLC*, No. CV-06-04149-MMM (SHx), 2008 WL

8150856, at *16 (C.D. Cal. Jul. 21, 2008) (concluding 34% fee award is fair and reasonable in wage and hour class action).

In determining whether an upward adjustment of the 25% benchmark is justified, courts in the Ninth Circuit consider the following factors: "(1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar." *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1116-17 (C.D. Cal. 2008); *see also Vizcaino*, 290 F.3d at 1048-50. An analysis of these factors shows that Class Counsel's request for a fee award of one-third of the gross settlement fund is reasonable.

### a.    The Result Obtained for the Class.

"The result achieved is a significant factor to be considered in making a fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. Jun. 10, 2005); *Hensley v. Eckerhart*, 461 U.S. 424, 436, (1983) ("the most critical factor is the degree of success obtained").  In evaluating the results achieved for the class, courts consider the value of the individual awards class members will receive rather than the size of the settlement fund.  *See Fernandez*, 2008 WL 8150856 at *11.

Here, the results obtained by Class Counsel warrant an upward adjustment of the 25% benchmark. The claims in this case concern, among other things, Delta's failure to pay a portion of the overtime premium wages. "These types of claims would not generally produce substantial individual damage awards." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013). Recoveries here would inevitably be modest, as they are largely based on the differential between overtime premiums actually paid and the slightly higher premiums that Class Members should have been paid had Defendant included all required forms of compensation in its regular rate calculations. Nevertheless, assuming none of the 3,385 Class Members opt out,[1] each

---

[1] As of January 24, 2020, two requests for exclusion have been received. Moore Decl. ¶ 3.

1    Class Member will receive from the total recovery of $3.5 million an average settlement
2    payment of approximately $636.52 and the maximum payment is $899.80. Moore Decl.
3    ¶ 5. A comparison of the average settlement award here to other actions in the Ninth
4    Circuit for wage and hour violations highlights the significant success achieved by Class
5    Counsel. *See, e.g., Barbosa*, 297 F.R.D. at 448-51 (court deemed recovery of
6    $1,290,000 for 1,837 employees a "favorable result" and awarded fees amounting to 33
7    1/3% of the total settlement). The Court should find that the results achieved are
8    excellent, especially if there is no objection by Class Members to the settlement amount
9    or to the attorney's fees requested. *Barbosa*, 297 F.R.D. at 44. In light of the significant
10   result achieved by Plaintiff for the Class, this factor favors granting the requested fee
11   award.

12        Evaluation of the value to the class of the result obtained in this case should also
13   take into consideration that the result was obtained relatively quickly thereby providing
14   a concomitantly swift payment of the benefit to the Class. Because the settlement was
15   reached fairly soon following investigation, the filing of the complaint and discovery,
16   the Class Members will get their substantial recoveries soon instead of having to wait
17   through years of uncertain litigation. This factor also favors granting the requested fee
18   award.

19             **b.**       **The Effort Expended by Class Counsel.**

20        This factor largely duplicates the lodestar calculation, which reflects the hours
21   Class Counsel spent litigating the case. *Fernandez*, 2008 WL 8150856 at *12. There is
22   no doubt that Class Counsel investigated and vigorously prosecuted the claims. Among
23   other work, Class Counsel conducted investigation, preliminary legal research and
24   drafting of the complaint; interviewed Class Members concerning their claims, drafted
25   written discovery, took and defended depositions, reviewed hundreds of pages of
26   relevant documents, including Class Members' timekeeping records, retained an expert
27   statistician who analyzed the wage and hour data, prepared to file a motion for class
28   certification, participated in a full-day of mediation in San Francisco and negotiated and

drafted the Stipulation, prepared the motion for preliminary approval and this motion, communicated with the Claims Administrator, and will prepare the motion for final approval, appear in court for necessary hearings, and ensure obligations under the Settlement and Court orders are discharged. MJM Decl. ¶ 4-10, 14; JMF Decl. ¶¶ 17-26.

Class Counsel thus expended significant time performing this work and did not sacrifice due diligence in achieving an efficient resolution of this case. Indeed, Class Counsel's combined lodestar does not even include paralegal hours or the estimated 30-50 hours Class Counsel will expend overseeing the administration of the Settlement, answering questions from Class Members about the Settlement, and attending the final fairness hearing. MJM Decl. ¶¶ 14; JMF Decl. ¶ 26. Class Counsel's persistence and success in prosecuting Plaintiff's claims in an efficient manner merits an upward adjustment of the 25% benchmark. MJM Decl. ¶¶ 25-31. This factor supports the requested award of attorney's fees under the percentage of recovery method.

### c.    The Experience and Skill of Class Counsel.

The quality of Class Counsel's experience and skill is demonstrated by the exceptional result achieved. As shown in the accompanying Declarations of Matthew J. Matern and James M. Finberg, Class Counsel are highly experienced litigators in the field of wage and hour class actions, and they put the full use of their skill and experience to work in the service of Plaintiffs and the Class Members in this case.  MJM Decl. ¶¶ 19-22; JMF Decl. ¶¶ 1-16; Ex. A. Importantly, Delta was represented by experienced and skilled attorneys from a law firm (Morgan Lewis & Bockius, LLP) with a strong reputation for vigorous advocacy in the defense of complex employment class action cases. MJM Decl. ¶ 25. Class Counsel's ability to obtain this Settlement in the face of such formidable legal opposition confirms the quality of Class Counsel's representation. *Barbosa*, 297 F.R.D. at 449 ("[t]he quality of opposing counsel is important in evaluating the quality of Class Counsel's work") (citing *In re Equity Funding Corp. Sec. Litig.*, 438 F.Supp. 1303, 1337 (N.D. Cal. 1977)).

The Court should find that the experience and specialized skill of Class Counsel in this area of the law was an asset to the Class Members. Class Counsel's "extensive investigation, comprehensive discovery practice, and skillful preparation resulted in a favorable Settlement for the Class." *Hopkins v. Stryker Sales Corp.,* No. 11-CV-02786-LHK, 2013 WL 496358, at *2 (N.D. Cal. Feb. 6, 2013). Class Counsel advanced the costs associated with the litigation of this matter, including expert analysis and mediation fees, in order to fully and competently prepare this matter for the benefit of the Class. MJM Decl. ¶ 31; Ex. A; JMF Decl. ¶¶ 36-38; Ex. I. These factors weigh in favor of approval of the fee award.

### d. The Complexity of the Issues.

This case involved complex issues of wage and hour law underlying Plaintiff's allegations that:

1. Delta did not include the value of domestic partner or companion pass travel in the regular rate for the purpose of calculation of overtime, even though Delta imputed income on such pass travel.

2. Delta did not include the premium pay from missed or late meal periods in the regular rate of pay for the purposes of calculating overtime, even though the California Supreme Court clarified in *Murphy v. Kenneth Cole*, 40 Cal. 4th 1094 (2007), that such premium pay is wages.

3. Since July 1, 2017, Delta has included in the regular rate of pay non-discretionary bonuses from "Shared Rewards" arising from meeting performance metrics, but not in the pay periods when the bonuses were earned, in violation of California Law.

4. When calculating premium pay for overtime, Delta includes vacation, holiday and paid time off days in the denominator, thus reducing the premium, in violation of California Law.

5. Delta does not include payments from the Delta Profit-Sharing Plan in the regular rate of pay for the purpose of calculating overtime, even though that plan does not meet the exemption for profit-sharing plans, since it is not calculated purely from "profit."

Class Counsel was required to analyze a substantial amount of data pertaining to a large putative class and consult with an expert statistician. MJM Decl. ¶¶ 8, 13. This factor also weighs in favor of granting an upward adjustment of the benchmark.

### e. The Risk of Non-Payment.

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of class counsel's fee award." *Heritage*, 2005 WL 1594403, at *21. Here, Class Counsel proceeded entirely on a contingency basis while paying for all expenses incurred, and invested time, effort, and money with no guarantee of any recovery. MJM Decl. ¶ 25. Class Counsel faced substantial risk of non-payment for hundreds of hours of work because of the uncertainty of obtaining class certification and of establishing liability. Plaintiff brought this action against a major national corporation with extensive resources. Plaintiff's counsel were involved in prior litigation against the same defendant involving wage and hour claims and so were fully aware, given the rulings on the class certification and summary judgment motions evidence in that prior action, that this case did not lend itself to easy proof of liability or damages. MJM Decl. ¶ 25. Class Counsel prosecuted this case knowing there was a chance that Delta could prevail and that, even if Plaintiff prevailed, the case would likely take years to bring to trial and would not be resolved without an appeal. This risk of no recovery on a classwide basis in complex wage and hour class actions is very real. From the outset, Delta vehemently contested liability and it continues to do so today. In light of these substantial risks and obstacles, Class Counsel thus undertook Plaintiff's representation with the hope that they would receive a risk enhancement if they prevailed. MJM Decl. ¶ 26. Having nevertheless obtained an

1    excellent result for the Class, Class Counsel should be fully compensated for their work

2    and the risk involved.

3           In cases where the recovery is far from certain, as here, an award of attorney's

4    fees constituting more than 25% of the common fund is appropriate. *See In re Wash.*

5    *Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994) (finding district

6    court's failure to apply multiplier to lodestar calculation was abuse of discretion where

7    the case was "fraught with risk and recovery was far from certain"); *Vizcaino*, 290 F.3d

8    at 1048.  In sum, Class Counsel's requested fee award is justified by the significant risk

9    assumed in litigating this case on a contingency basis without any guarantee of

10   compensation.  *Graham*, 34 Cal. 4th at 580 ("A contingent fee must be higher than a fee

11   for the same legal services paid as they are performed.  The contingent fee compensates

12   the lawyer not only for the legal services he renders but for the loan of those services.")

13   (internal quotations omitted); *Barbosa*, 297 F.R.D. at 449 ("Like this case, where

14   recovery is uncertain, an award of one-third of the common fund as attorneys' fees has

15   been found to be appropriate") (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

16   463 (9th Cir. 2000); *Heritage*, 2005 WL 1594403, at *19, n. 14.

17                  **f.    The Reaction of the Class.**

18          Thus far, the reaction of the class to the Settlement has been overwhelmingly

19   positive in that only 2 requests for exclusion and no objections have been received.

20   Moore Decl. ¶¶ 3-4. If the final tally reflects no objections to the fee request, such a

21   reaction will strongly support an increase in the benchmark percentage. "Numerous

22   courts have noted that the lack of objection from members of the class is one of the most

23   important" factors in determining the reasonableness of a requested fee.  *In re*

24   *Prudential Sec. Inc. Ltd. P'ships. Litig.*, 985 F.Supp. 410, 416 (S.D. N.Y. 1997)

25   (internal citations omitted); *Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL

26   1522385, at *6 (N.D. Cal. Apr. 21, 2011) ("The fact that no members of the 390-person

27   class objected to the proposed 33% fee award—which was also communicated in the

28

notice—supports an increase in the benchmark rate") (citing *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1048 (N.D. Cal. 2008)).

### g.     Comparison with the Lodestar.

A lodestar cross-check also weighs in favor of an award above the 25% benchmark.  As explained below, Class Counsel's current combined lodestar of $462,374.5 (MLG's lodestar of $130,849.00 plus AB's lodestar of $331,525.50) which does not include paralegal hours or 30-50 hours estimated to be expended through final approval and the end of the litigation, supports the requested fee award of $1,166,666.67. This factor supports the fairness and reasonableness of a fee award of 33 1/3% of the total settlement fund.  *Barbosa*, 297 F.R.D. at 454 (concluding that a 33 1/3% fee award, necessitating a 1.06 multiplier of the lodestar, is reasonable and commensurate with other wage and hour class actions); *Fernandez*, 2008 WL 8150856 at *16 (finding a 34% award, representing application of a risk multiplier of approximately 1.82 to the lodestar amount, is fair and reasonable).

Class Counsel's lodestar yields a 2.52 multiplier, which is well within the range for reasonable multipliers. See *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-1054 (9th Cir.), cert. denied, 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 425 (2002) (surveying multipliers in 23 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases); *Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1170 (C.D.Cal.2010) (observing that "multipliers may range from 1.2 to 4 or even higher"); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, *4 (N.D.Cal.2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). Thus, the lodestar cross-check further supports the attorney's fees request. See *Laffitte*, 1 Cal.5th at 496, ("If the implied multiplier is reasonable, then the cross-check confirms the reasonableness of the percentage-based fee[.]").

Taking all of the relevant factors into consideration, the Court should conclude that Plaintiff has shown circumstances warranting an award of fees above the 25%

benchmark and approve the requested fees in the amount of $1,166,666.67, which represents 33 1/3% of the total settlement fund.

### D.    Class Counsel's Requested Fee Award Is Reasonable Based Upon A Lodestar Cross-Check.

Courts utilize the lodestar as a cross-check on the reasonableness of the percentage of the fund approach. *See Laffitte,* 1 Cal. 5th at 496; *Barbosa*, 297 F.R.D. at 448; *Fernandez*, 2008 WL 8150856 at *14.  Under the lodestar method, the court considers the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate for each attorney. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1131–32 (2001); *PLCM Group, Inc. v. Drexler,* 22 Cal. 4th 1084, 1095 (2000); *see also McGrath v. County of Nevada,* 67 F.3d 248, 252 (9th Cir.1995). The moving party meets its burden in this regard by submitting "declarations evidencing the reasonable hourly rate for their services and establishing the number of hours spent working on the case," as "California case law permits fee awards in the absence of detailed time sheets." *Wershba*, 91 Cal. App. 4th at 254-255; *Mardirossian & Assocs., Inc. v. Ersoff,* 153 Cal. App. 4th 257, 269 (2007) (same) (citing *Steiny & Co. v. California Electric Supply Co.*, 79 Cal. App. 4th 285, 293 (2000); *Laffitte,* 1 Cal. 5th at 505 (trial court properly exercised its discretion to perform the lodestar cross-check "using counsel declarations summarizing overall time spent rather than demanding and scrutinizing daily time sheets in which the work performed was broken down by individual task").

Similarly, under federal law, "[w]here the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Barbosa,* 297 F.R.D. at 451; *In re Rite Aid. Corp. Sec. Litig*., 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting"); *In re Immune Response Sec. Litig*., 497 F.Supp.2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check").

The "lodestar" figure may be augmented or diminished by the court taking into account various "multiplier" factors, including the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, and whether the fee is fixed or contingent. *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 622 (2000), citing *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977).  "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299).  Here, Class Counsel's total lodestar is approximately $462,374.50 (which is based on 178.40 and 371.2 attorney hours billed by MLG and AB respectively, at customary hourly rates).  Matern Decl. ¶¶ 14-15; JMF Decl. ¶¶ 23-25.

### 1.     Class Counsel's Hourly Rates Are Reasonable.

Class Counsel's hours are to be multiplied by a "reasonable hourly rate" to generate the lodestar figure. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009).  To determine the reasonable hourly rate, the court must look to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *accord MBNA American Bank, N.A. v. Gorman,* 147 Cal. App. 4th 1, 13 (2006) ("[I]n assessing a reasonable hourly rate, the trial court is allowed to consider the attorney's skill as reflected in the quality of work, as well as the attorney's reputation and status.").  Courts may "find hourly rates reasonable based on evidence of other courts approving similar rates."  *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010).  "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of

the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (the submission of "declarations stating that the rate was the prevailing market rate in the relevant community [was]… sufficient to establish the appropriate rate for lodestar purposes"). As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Class Counsel's rates are in line with the current prevailing billing rates in the Los Angeles and San Francisco areas. MJM Decl. ¶¶ 23-24; JMF Decl. ¶¶ 27-33.  *See also Rodriguez v. County of Los Angeles*, 96 F.Supp.3d 1012, 1023 (C.D. Cal. 2014) (approving attorney rates in 2014 from $500 per hour for attorney with 6 years of experience to $975 per hour for attorney practicing 45 years). The requested rates are also within the range previously approved by various courts in the cases Class Counsel has litigated. MJM Decl. ¶¶ 23-24; JMF Decl. ¶ 29; Exs. B-H. Class Counsel are experienced litigators who specialize in employment law, with a substantial wage and hour class action practice. MJM Decl. ¶¶ 18-22; JMF Decl. ¶¶ 30-33.  Given the skill and experience of Class Counsel and the excellent result achieved for the Class Members, Class Counsel's hourly rates are reasonable.

### 2.    Class Counsel's Hours Are Reasonable.

In determining whether the number of hours expended on the litigation was reasonable, the court must determine that the "time spent was reasonably necessary and that [] counsel made 'a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary.' " *Jordan v. Multnomah County*, 815 F.2d 1258, 1263, n.8 (9th Cir. 1987) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 434 (1983)). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). In determining the reasonableness of the hours expended on the litigation, "the district court should take into account the reality that some amount of duplicative work is

'inherent in the process of litigating over time.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).  The district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112 (noting that "[l]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee."); *see also Guam v. Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir.1996) ("[A]lthough it may be easy, in hindsight, to tout this as an easy victory, plaintiffs cannot be faulted for their thoroughness under the circumstances."). "An attorney's sworn testimony that, in fact, it took the time claimed '…is evidence of considerable weight on the issue of the time required…'" *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (quoting *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988)).

Class Counsel expended a significant amount of time investigating and litigating the case for more than a year to achieve the excellent result on behalf of the Class. The summary of their work ranges from investigation (from legal research of Plaintiff's claims and interviews of Plaintiff and dozens of Delta employees), to discovery (extensive data production and analysis and PMK depositions), review of hundreds of pages of Delta's policy and plan documents, substantial preparations for class certification motion work (researching and drafting the class certification motion), attending court hearings, participating in numerous conferences and correspondence with Delta's counsel; retaining and consulting an expert statistician to analyze the time and payroll records and other employment records and performing damages calculations based on those records, research and preparation of a mediation brief and damages analyses; participation in a mediation session, in addition to ongoing settlement discussions; drafting, negotiating, and revising the Settlement; researching and drafting the Motions for Preliminary and accompanying declarations; and communicating with

Delta's counsel and the Settlement Administrator to effectuate the terms of the Settlement and to monitor the claims process.  MJM Decl. ¶ 13; JMF Decl. ¶¶ 26, 35.

To date, Class Counsel has spent approximately a total of 549.6 attorney hours litigating this case, and will spend approximately 30-50 additional hours through final approval. [2]  MJM Decl. ¶¶ 14-15; JMF Decl. ¶¶ 34-35.  These hours were necessary and reasonable to achieve the excellent result on behalf of the Class.  MJM Decl. ¶ 14.  The attorney hours do not include the dozens of hours expended by Class Counsel's staff members. MJM Decl. ¶ 14.  Thus, Class Counsel's hours are reasonable.

### 3.   Application of a Positive Multiplier Is Appropriate.

After the court determines the lodestar value, the court may enhance the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action. *Ketchum*, 24 Cal. 4th at 1130, 1137 (2001); *Graham,* 34 Cal. 4th at 582. California courts have a more "permissive attitude on the use multipliers" than their federal counterparts. *Lealao*, 82 Cal. App. 4th at 43; *see Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1173 (1998) (finding that "adjustment from the lodestar figure will be far more common under California law than under federal law."); *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 646 (1998). Under California law, "[m]ultipliers can range from 2 to 4 or even higher" and are routinely granted. *Wershba*, 91 Cal. App. 4th at 254-255; *Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 66 (2008) (upholding 2.5 multiplier). Some of the factors courts consider when determining whether to apply a multiplier are: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum*, 24 Cal.4th 1122 at 1132 (citations omitted).

---

[2] The Ninth Circuit has repeatedly held that time spent by counsel establishing the right to a fee award is compensable.  *See, e.g. D'Emanuele v. Montgomery Ward & Co*., 904 F.2d 1379, 1387-88 (9th Cir. 1990).

In *Ketchum*, the California Supreme Court held that fee enhancement in contingency cases is necessary to (1) fully compensate counsel for the "loan" of legal services in light of the inherent high risk of "default" posed by losing the case, and (2) encourage competent counsel to take on fee award cases. *Ketchum*, 24 Cal.4th at 1132-1133. As the Court noted, "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Id.* at 1133 (citations omitted); *see Greene v. Dillingham Construction N.A., Inc.*, 101 Cal. App. 4th 418, 426 (2002) (holding that trial court erred by refusing to consider contingent risk as a factor in the decision to apply a multiplier).  Similarly, the Ninth Circuit recently held that "[t]he district *must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' " *Stetson*, 821 F.3d at 1166 (emphasis in original) (quoting *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016)).

In the event that the Court reduces Class Counsel's lodestar for purposes of comparison with the percentage award, application of a positive multiplier is appropriate for the reasons discussed above in connection with the necessity of an upward adjustment of the 25% benchmark. Class Counsel has been investigating and litigating this case for more than a year with no payment, expending significant time and resources which could have been directed towards other cases and assumed considerable risk given the uncertain proposition these types of cases entail. MJM Decl. ¶¶ 25-31. Accordingly, Plaintiffs request that the Court award Class Counsel the requested fees of $1,166,666.67.

### E.    Class Counsel's Request For Reimbursement Of Costs Is Reasonable.

Because Plaintiffs' claim for attorney's fees arises under California substantive law, the Court applies California law on costs rather than Local Rule 54. *Clausen v. M/V*

*New Carissa,* 339 F.3d 1049, 1064 (9th Cir. 2003). Cal. Labor Code §§ 1194 and 2802 provide that an employee is entitled to recover costs of suit in a civil action to recover unpaid wages and unreimbursed expenses.

Here, Class Counsel estimated their costs would not exceed $25,000.00. MJM Dec. ¶ 32; Dkt. 39-1, p. 4. Class Counsel has incurred a total of approximately $22,602.26 (MLG costs of $16,151.04 plus AB's costs of $6451.22) in unreimbursed costs and will continue to incur costs through final approval. MJM Decl. ¶¶ 32-33; JMF Decl. ¶ 37; Ex. I. Because these costs were reasonably incurred, the Court should award Class Counsel $25,000 in costs to be paid out of the common fund.

### F.     Delta Does Not Oppose This Motion.

Delta does not oppose this motion. Dkt. 138-3, ¶ 6.3.2.

## IV.     CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an order awarding Class Counsel's attorneys' fees in the amount of $1,166,666.67 and Class Counsel reimbursement of litigation costs in the amount of $22,602.26.

DATED:  January 27, 2020                   Respectfully submitted,

**MATERN LAW GROUP, PC**
Matthew J. Matern
Matthew W. Gordon
Scott A. Brooks

**ALTSHULER BERZON LLP**
James M. Finberg
Eileen B. Goldsmith


By: */s/ Matthew J. Matern*
        Matthew J. Matern

Attorneys for Plaintiff
HOWARD FAN