**MATERN LAW GROUP, PC**
MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
MATTHEW W. GORDON (SBN 267971)
mgordon@maternlawgroup.com
SCOTT A. BROOKS (SBN 160115)
sbrooks@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

**ALTSHULER BERZON LLP**
JAMES M. FINBERG (SBN 114850)
jfinberg@altshulerberzon.com
EILEEN B. GOLDSMITH (SBN 218029)
egoldsmith@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Class Counsel and Attorneys for Plaintiff Howard Fan,
individually, and on behalf of others
similarly situated

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD FAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DELTA AIR LINES, INC., a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendants. | No. 2:19-cv-04599-SVW-SS<br><br>[Assigned to Hon. Stephen V. Wilson, Courtroom 10A; Magistrate Judge: Hon. Suzanne H. Segal]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     March 9 , 2020<br>Time:     1:30 p.m.<br>Ctrm:     10A<br>Judge:     Hon. Stephen V. Wilson |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 9, 2020 at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 10A of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, Plaintiff Howard Fan ("Plaintiff") will, and hereby does, move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order as follows:

1.    Granting final approval of the terms of the Stipulation of Settlement[1] ("Stipulation" or "Settlement") as fair, reasonable, and adequate to all Parties and all Class Members and in the best interests of the Class Members;

2.    Finding that the Class Notices distributed to the Class Members pursuant to the Court's order granting preliminary approval constituted the best notice practicable under the circumstances to all Class Members;

3.    Finally certifying the Class for settlement purposes only;

4.    Directing that compensation to the Settlement Class Members be paid pursuant to the terms of the Stipulation;

5.    Approving the settlement of the Labor Code Private Attorneys General Act of 2004 claim pursuant to California Labor Code section 2699(*l*) and the payment to the California Labor and Workforce Development Agency in the amount of $100,000.00;

6.    Approving a Service Payment to the Class Representative in the amount of $10,000.00;

7.    Approving the Claims Administrator's costs and fees in the amount of $45,000.00;

---

[1] The Stipulation of Settlement is attached as Exhibit 1 to the Declaration of Matthew J. Matern ("Matern Decl.") submitted herewith and is also found at Docket No. 39-3.

8.    Ordering the Parties to comply with the terms of the Settlement Agreement; and,

9.    Entering final judgment in the Action.[2]

This motion will be based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Matthew J. Matern, Howard Fan, and Jeff Moore, including all exhibits thereto, the complete files and records of this case, and any other evidence or oral argument which may be considered by the Court at the time of the hearing.

Since this motion is the result of a stipulated Settlement, defendant Delta Airlines, Inc. does not oppose this motion. Settlement Agreement at ¶ 6.3.1, Exhibit 1.

DATED:  February 10, 2020

Respectfully submitted,

**MATERN LAW GROUP, PC**
Matthew J. Matern
Matthew W. Gordon
Scott A. Brooks

**ALTSHULER BERZON LLP**
James M. Finberg
Eileen B. Goldsmith

By: */s/ Matthew J. Matern*
     Matthew J. Matern

Class Counsel and Attorneys for Plaintiff Howard Fan

---

[2] On January 27, 2020, Plaintiff filed a separate motion for approval of Class Counsel's attorneys' fees and costs. (Dkt. 42.)

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION    1

II.    STATEMENT OF FACTS    2

    A.    Procedural History. .......................................................................2

    B.    Discovery and Investigation. ......................................................2

    C.    Settlement Negotiations. .............................................................3

    D.    Preliminary Approval and Notice to the Class. ....................3

III.    THE SETTLEMENT……………………………………………………4

    A.    Class Definition.............................................................................4

    B.    Settlement Terms. .........................................................................5

    C.    Release. ...........................................................................................7

IV.    CLASS CERTIFICATION SHOULD BE GRANTED FOR PURPOSES OF FINAL APPROVAL…………………………………………………8

V.    CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23 AND DUE PROCESS…………………………………………8

VI.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL………9

    A.    Relevant Criteria Support Final Approval Of The Proposed Settlement.....................................................................11

        1.    The Settlement Offers Substantial Benefits when Balanced with the Strength of Plaintiff's Case. ..........................................11

        2.    The Risk, Complexity and Duration of Further Litigation. ...14

        3.    The Risk of Maintaining Class Action Status Throughout the Litigation. ....................................................................................15

        4.    The Amount Offered in Settlement. ......................................15

     5.     Extent of Discovery Completed and Stage of Proceedings. ...16

     6.     The Experience and Views of Class Counsel. ..........................17

     7.     The Presence of a Government Participant.............................18

     8.     The Class Members' Reaction to the Proposed Settlement. ...18

VII.   THE COURT SHOULD APPROVE KCC's FEES ...............................18

VIII.  DELTA DOES NOT OPPOSE THIS MOTION ................................18

IX.    CONCLUSION............................................................................19

1
2

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

3  <u>Cases</u>

4  *Barbosa v. Cargill Meat Solutions Corp.*,
5      297 F.R.D. 431 (E.D.Cal.2013)................................................... 16, 17

6  *Hanlon v. Chrysler Corp.*,
7      150 F.3d 1011 (9th Cir. 1998).......................................................9, 10

8  *In re Mego Fin. Corp. Sec. Litig.*,
9      213 F.3d 454 (9th Cir. 2000) .............................................................14

10  *In re Mercury Interactive Corp. Sec. Litig.*,
11      618 F.3d 988 (9th Cir. 2010) ............................................................. 6

12  *In re Pacific* Enterprises Securities Litigation
13      47 F.3d 373 (9th Cir. 1995) ..............................................................17

14  *In re Portal Software Secs. Litig.*,
15      No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)...............15

16  *In re Synocor ERISA Litigation*,
17      516 F.3d 1095 (9th Cir. 2008) ..........................................................10

18  *Linney v. Cellular Alaska Partnership*,
19      151 F.3d 1234 (9th Cir. 1998)...........................................................16

20  *Molski v. Gleich*,
21      318 F.3d 937 (9th Cir. 2003) ............................................................18

22  *Mullane v. Central Hanover Bank & Trust Co.*,
23      339 U.S. 306 (1950)........................................................................ 8

24  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
25      221 F.R.D. 523 (C.D. Cal. 2004) .................................................. 13, 18

26  *Officers for Justice v. Civil Serv. Comm'n*,
27      688 F.2d 615 (9th Cir. 1982)................................................. 9, 14, 16

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)........................................................... 9, 11

*Saulic v. Symantec Corp.*,
    596 F.Supp.2d 1323 (C.D. Cal. 2009) .............................................. 8

*Staton v. Boeing Co.*,
    327 F. 938 (9th Cir. 2003) ........................................................... 9, 11

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (C.D. Cal. 2010) ...................................................... 11

**<u>Statutes</u>**

Business and Professional Code Section 17200 .................................... 2

California Civil Code section 2698 ...................................................... 5

California Civil Code section 2699 ...................................................... 2

California Civil Code section 1542 ......................................................7

California Labor Code section 2699(*l*) ............................................... 2

**<u>Rules</u>**

Federal Rules of Civil Procedure, Rule 23....................................... 2, 8

Federal Rules of Civil Procedure, Rule 23(e) .................................... 9

Federal Rules of Civil Procedure, Rule 23(c)(2)(B)............................ 8

Federal Rules of Civil Procedure, Rule 23(e)(1) ............................... 8

Federal Rules of Civil Procedure, Rule 23(e)(l)(c) ........................... 9

Federal Rules of Civil Procedure, Rule 30(b)(6) ...........................3, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On November 14, 2020, this Court granted preliminary approval of the proposed class action settlement between Plaintiff Howard Fan ("Plaintiff"), and Defendant Delta Air Lines, Inc. ("Delta") (collectively, "the Parties"). Dkt. 41. Plaintiff now seeks entry of an order granting final approval of the Stipulation of Settlement ("Stipulation" or "Settlement"). Declaration of Matthew J. Matern ("MJM Decl."), Ex. 1. In its November 14, 2019 Order Granting Motion For Preliminary Approval Of Settlement, the Court certified the following Settlement Class:

> All persons employed by Delta Air Lines, Inc., in non-exempt
> positions in California (excluding flight attendants and pilots) at any
> time from July 1, 2017 through November 14, 2019.

Dkt. 41, p. 3.

If finally approved, the Settlement will create a non-reversionary settlement fund in the amount of $3.5 million for 3,383 Class Members. The Settlement was reached through litigation, mediation, arms-length settlement negotiations, and extensive investigation and discovery which allowed Class Counsel to act intelligently, and Class Counsel supports the Settlement as being in the best interests of the Class.

The Settlement is fair, adequate, and reasonable, as it provides substantial benefits to the Class Members when balanced with the risks of continued litigation. The deadline for Class Members to object or opt out is February 10, 2020. As of February 3, 2020, the reaction of the Class Members to the proposed Settlement has been overwhelmingly positive in that no Class

1  Members have objected to the Settlement and only two (2) persons opted out.[3]

2  Accordingly, Plaintiff respectfully requests that the Court grant final approval of

3  the Settlement.

4  **II.    STATEMENT OF FACTS**

5        **A.    Procedural History.**

6        This action was filed on March 25, 2019 in the United States District Court

7  for the Northern District of California. Dkt. 1. On May 24, 2019, the case was

8  transferred to the Central District of California. Dkt. 13. The complaint alleged

9  claims on behalf of a statewide class of non-exempt Delta employees for failure

10  to calculate overtime properly arising from shift differential pay, Shared

11  Rewards payments, profit-sharing payments, and the fair market value of pass

12  travel privileges and Travel Companion Passes (which Plaintiff alleged was a

13  form of in-kind compensation that Delta treats as taxable income to the

14  employee). Dkt. 1 at pp. 2-3. Plaintiff also alleged related derivative claims

15  under the California Labor Code and Unfair Competition Law, which include

16  claims for failure to timely pay wages, failure to furnish accurate, itemized wage

17  statements, failure to maintain required records, failure to pay all wages due to

18  discharged and quitting employees, unfair and unlawful business practices (Cal.

19  Code Bus. and Prof. § 17200 et seq.), and civil penalties under California's Labor

20  Code Private Attorneys General Act of 2004 ("PAGA") (Cal. Labor Code § 2699

21  et seq.). Dkt. 1.

22        **B.    Discovery and Investigation.**

23        The deadline for Plaintiff's motion for class certification was September 23,

24  2019. Thus, Plaintiff's counsel engaged in substantial discovery and investigation

25  of his claims and Delta's defenses both in preparation for class certification and

26

27  [3] Plaintiff will file a supplemental declaration from the Claims Administrator, KCC, LLC ("KCC") before the hearing date to provide the Court with updated information. Declaration of Jeff Moore ("Moore Decl.") ¶ 15 and an amended

28  proposed Final Order and Judgment.

the mediation. MJM Decl. ¶¶ 6-11. Plaintiff served Requests for Production and obtained documents from Delta including the policy materials for shift differential pay, Delta's Shared Rewards program, profit-sharing plan, and travel passes. MJM Decl. ¶ 10.

In addition to Plaintiff's own time, payroll and personnel records, Plaintiff obtained from Delta a 10% sample of time and payroll data representing hundreds of thousands of data points for the class members and included compensation data for shift differentials, meal premium penalties, insurance, award travel, non-revenue travel, Shared Rewards, customer incentives, cargo incentives, cash awards and profit sharing.  MJM Decl. ¶ 10. Plaintiff also served and received responses to interrogatories. MJM Decl. ¶ 7. Plaintiff's counsel deposed three witnesses whom Delta designated as knowledgeable about topics in the case pursuant to Fed.R.Civ.P. 30(b)(6). MJM Decl. ¶ 11. Delta deposed Plaintiff Fan and served requests for production and Plaintiff Fan produced hundreds of pages including records of his award and non-revenue travel. MJM Decl. ¶ 11,

Plaintiff retained an expert to analyze the class member time and payroll records for observed rates of the various alleged Labor Code violations and to provide a damages analysis used in mediation. MJM Decl. ¶ 10.

### C.    Settlement Negotiations.

On September 16, 2019, the parties participated in a mediation with Mark Rudy, a well-respected and experienced mediator in California wage and hour cases. MJM Decl. ¶ 13. At the end of the full-day session, the Parties were able to agree to the basic terms of the settlement in writing. *Id.* The Parties then spent substantial time over the following two months negotiating and finalizing the terms of a detailed settlement agreement. MJM Decl ¶ 13.

### D.    Preliminary Approval and Notice to the Class.

On November 14, 2019, the Court granted preliminary approval of the Settlement and directed that Notice be sent to the Class Members. Dkt. 41.

KCC established a website, www.FanvDeltaSettlement.com to provide information to the Class Members and to answer frequently asked questions. Moore Decl. ¶ 9. The website URL was set forth in the Notice. *Id*. Visitors of the website can download copies of the Notice and other case-related documents. *Id*. On December 27, 2019, KCC established a toll-free telephone number dedicated to answering telephone inquiries from Class Members. Moore Decl. ¶ 10.

On December 27, 2019, KCC mailed the Class Notice to 3,385 Class Members. Moore Decl. ¶ 6 and Ex. A. Since mailing the Notices to the Class Members, KCC has received twenty-nine (29) Notices returned by the United States Postal Service ("USPS") with forwarding addresses. Moore Decl. ¶ 7. KCC received ninety (90) Notices returned by the USPS with undeliverable addresses. Moore Decl. ¶ 8. As of February 3, 2020, through credit bureau and/or other public source databases, KCC performed address searches for ninety (90) of these undeliverable Notices and was able to find updated addresses for seventy-four (74) Class Members. *Id*. KCC promptly re-mailed Notices to the new found addresses. *Id*. KCC is was not able to locate a new address for sixteen (16) Class Members who, according to the terms of the Settlement Agreement, are not eligible to receive a settlement check. *Id*.

The deadline to object or opt-out of the Settlement is February 10, 2020. *Id*. at ¶¶ 11-12; Ex. A. As of February 3, 2020, no objections and only three (3) exclusion requests have been received. *Id*. at ¶¶ 11-12.

## III.    THE SETTLEMENT

### A.    Class Definition.

The Class consists of "all persons employed by Delta Air Lines, Inc., in non-exempt positions in California (excluding flight attendants and pilots) at any time from July 1, 2017 through November 14, 2019." Ex. 1, ¶ 2.4.

**B.    Settlement Terms.**

The claims of all Settlement Class Members shall be settled for the Gross Settlement Amount of $3.5 million dollars which is inclusive of the Net Settlement Amount payable to Participating Class Members, attorneys' fees (not to exceed One Million One-Hundred Sixty-Six Thousand Six Hundred Sixty-Six Dollars and Sixty-Seven Cents ($1,166,666.67)), litigation costs to be determined by the Court and anticipated to be no more than Twenty-Five Thousand Dollars ($25,000.00), a One Hundred Thousand Dollar ($100,000.00) payment to the Labor & Workforce Development Agency ("LWDA") for the State's share of penalties under the Labor Code Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698 *et seq*., a Service Payment not to exceed Ten Thousand Dollars ($10,000.00) to the class representative, Forty-Five Thousand Dollars ($45,000.00) for KCC's administration costs, and Delta's share of payroll taxes on class member settlement payments. Ex. 1, ¶¶ 2.19, 5.2.1. The Gross Settlement Amount is entirely non-reversionary. Ex. 1, ¶ 6.4.1.

The Gross Settlement Amount shall be allocated as follows:

1.    *Net Settlement Payments to Participating Class Members*. Each Participating Class Member, defined as "a Class Member who does not submit a signed, valid and timely Opt-Out Request to be excluded from the Settlement," will automatically be mailed a Settlement Payment within 21 days after the Settlement becomes effective. Ex. 1, ¶¶ 6.4.2, 5.7.4., 2.27. The Settlement Payments will be calculated as each Class Member's pro rata share of the Net Settlement Amount, based on the number of weeks worked by each Class Member during the Class Period. Ex. 1, ¶¶ 2.22, 5.7.1.  Assuming that all other allocations from the Gross Settlement Amount are approved by the Court, approximately $2,046,477.52 will be available for settlement payments to Class Members.  Moore Decl. ¶ 13.

The funds associated with any checks that are not properly or timely negotiated within 180 days from the date of issuance shall go into a pool of funds to be divided, pro rata, among all Class Members who previously cashed their payment (unless the Parties agree that the amount is less than $35,000.00, in which case it shall be paid as a cy pres award to the Los Angeles Center for Law and Justice).  Ex. 1, ¶ 5.7.1(b); 6.4.3. No portion of the Maximum Settlement Amount shall revert to Delta.  Ex. 1, ¶ 6.4.1.

2.    *Class Representative Service Payment.*  Under the terms of the Settlement, plaintiff Howard Fan is entitled to seek a Class Representative Service Payment not to exceed Ten Thousand Dollars ($10,000.00) for his time and effort in serving as the class representative in the action, which Delta will not oppose.  Ex. 1, ¶¶ 5.3.1, 6.3.2. Plaintiff Fan submits herewith a detailed declaration in support of his request for a Class Representative Service Payment. See, generally, Declaration of Howard Fan; MJM Decl. ¶ 9.

3.    *Class Counsel's Attorneys' Fees and Costs.*  Class Counsel is entitled to seek reasonable attorneys' fees not to exceed One Million One-Hundred Sixty-Six Thousand Six Hundred Sixty-Six Dollars and Sixty-Seven Cents ($1,166,666.67) plus reasonable costs from the Gross Settlement Amount, to be determined by the Court and anticipated to be no more than $25,000.00 (Dkt. 42-1, ¶ 39), which Delta will not oppose. Ex. 1, ¶¶ 5.4.1, 6.3.2. That request is addressed in Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. 42) and was filed on January 27, 2019, two weeks in advance of the deadline for objections to the Settlement, in accordance with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).

4.    *Settlement Administration Costs.*  KCC is to be paid from the Gross Settlement Amount for Settlement Administration Costs in an amount not to exceed Forty-Five Thousand Dollars ($45,000.00).  Ex. 1, ¶ 5.6.1.

5.    *Payment to the LWDA*.  The LWDA is to receive $100,000.00 from the Gross Settlement Amount to the LWDA for settlement of all claims for penalties under PAGA.  Ex. 1, ¶ 5.5.3. This amount represents the State's 75% share of PAGA penalties.

6.    *Payroll Taxes*. KCC shall withhold, from each Participating Class Member's Settlement Payment, such Participating Class Member's share of applicable payroll taxes. Ex. 1, ¶ 5.7.4. Twenty-five percent (25%) of the Net Settlement Amount will be allocated to wages and seventy-five percent (75%) will be allocated to interest and penalties.  Ex. 1, ¶ 5.7.4.  The Settlement Administrator shall withhold, from each Participating Class Member's Settlement Payment, such Participating Class Member's share of applicable payroll taxes. Ex. 1. ¶¶ 2.19, 5.7.4.

**C.    Release.**

The Class Members' release is coextensive with those claims that were or could have been brought in the operative Complaint (Dkt. 1), which pleaded claims for failure to provide meal and rest breaks, failure to include certain components of compensation in the calculation of employees' regular rate of pay for overtime, and derivative claims based on pay stubs / wage statements, final pay, timing of pay, recordkeeping, unfair competition, and statutory and civil penalties. Class Members' claims will be released through January 31, 2020. Ex. 1, ¶¶ 2.31, 5.8.1.

The Class Representative will also provide a general release of claims against Delta and a waiver of his rights under California Civil Code section 1542. Ex. 1, ¶¶ 2.9, 5.8.2, 5.8.3.

///

///

///

## IV.  CLASS CERTIFICATION SHOULD BE GRANTED FOR PURPOSES OF FINAL APPROVAL

The Court determined in its preliminary approval order that the Settlement Class meets the requirements for class certification under Rule 23(a) and Rule 23(b)(3) (except manageability which the Court found was not relevant for purposes of this Settlement). Dkt. 41, ¶ 5.  Having determined that the proposed Settlement satisfies the numerosity, commonality, typicality, adequacy (of the Class Representatives and Class Counsel), superiority and predominance requirements, the Court must now consider the fairness, adequacy and reasonableness of the proposed settlement.  Dkt. 41, ¶¶ 6.a.-f.

## V.    CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23 AND DUE PROCESS

Before final approval of a class action can issue, notice of the settlement must be provided to the class.  Fed. R. Civ. P. 23(e)(1).  Rule 23 requires that the class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Notice to the class must be "reasonably calculated under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Saulic v. Symantec Corp.*, 596 F.Supp.2d 1323, 1327 (C.D. Cal. 2009). In the Court's November 14, 2019 Order granting preliminary approval of this proposed Settlement, this Court found that the Class Notice "comports with Fed. R. Civ. P. 23 and all Constitutional requirements including due process." Dkt. 41, ¶ 8.

The notice plan, as approved by the Court, has been fully implemented by KCC.  On December 16, 2019, KCC received the Class List from Delta and updated the addresses for the Class Members. Moore Decl. ¶ 5. On December

27, 2019, KCC caused the Court-approved notices to be mailed to the 3,385 persons on the Class List. Moore Decl. ¶ 6. Twenty-nine (29) Notices were returned by the USPS with forwarding addresses. Moore Decl. ¶ 7. Of the Notices mailed, 90 were returned as undeliverable, of which seventy-four were promptly re-mailed after KCC conducted address searches and located updated addresses for those Class Members. Moore Decl. ¶ 8. As of February 3, 2020, no Class Members have objected to the Settlement and only three (3) persons requested to be excluded from the Settlement. Moore Decl. ¶¶ 11-12.

## VI.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Pursuant to Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. 23(e). In order to approve a final settlement in a class action, the district court must find that the proposed settlement is fundamentally fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(l)(c); *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003). Although the Court possesses "broad discretion" in issuing a final determination that a proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Courts in the Ninth Circuit have "long deferred to the private consensual decision of the Parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998)). In the end, "[s]ettlement is the offspring of compromise; the question [the court] addresses is not whether the final product could be prettier, smarter

or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  In considering whether to grant final approval of a class action settlement, the Ninth Circuit has noted that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litigation*, 516 F.3d 1095, 1011 (9th Cir. 2008).

The Settlement was reached only after sufficient and substantial written discovery including interrogatories and requests for production whereby Plaintiff obtained documents from Delta including the policy materials for shift differential pay, Delta's Shared Rewards program, profit-sharing plan, and travel passes. In addition, Plaintiff obtained from Delta a 10% sample of time and payroll data representing hundreds of thousands of data points for the class members and included compensation data for shift differentials, meal premium penalties, insurance, award travel, non-revenue travel, Shared Rewards, customer incentives, cargo incentives, cash awards and profit sharing, and Plaintiff's counsel deposed three Delta witnesses pursuant to Fed.R.Civ.P. 30(b)(6). Plaintiff also retained an expert, Berger Consulting Group, to analyze a sample of class member payroll records and provide an expert report regarding the observed rates of various alleged Labor Code violations. There was a full-day arm's length mediation sessions with the assistance of an experienced mediator, Mark Rudy. Thus, Plaintiffs and Class Counsel had ample information to fully assess the strengths and weaknesses of Plaintiffs' claims against Delta and assess whether the proposed Settlement is fair, adequate, and reasonable. Matern Decl. ¶ 23.

Class Counsel, who have significant experience in wage and hour class action litigation including against this Defendant, support the Settlement because it achieves an outstanding result for the Settlement Class, particularly

in light of the risks of continued litigation. Matern Decl. ¶ 23. Accordingly, the proposed Settlement is entitled to a presumption of fairness.

## A.    Relevant Criteria Support Final Approval Of The Proposed Settlement.

In deciding whether to grant final approval of a class action settlement, courts consider several factors, including: (l) the strength of the plaintiff's case; (2) the risk, complexity, and duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez*, 563 F.3d at 963; *see also Staton*, 327 F .3d at 959.  The list of factors is not exhaustive and should be tailored to each case.  *Staton*, 327 F.3d at 959. Applied to this case, the relevant criteria support final approval of the proposed Settlement.

### 1.    The Settlement Offers Substantial Benefits when Balanced with the Strength of Plaintiff's Case.

The benefits of settlement and Plaintiffs' chances of success are typically evaluated together. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.") (internal quotation mark omitted).

The Settlement provides substantial monetary relief for Class Members. The quality of the Settlement is apparent from its relationship to the potential recovery on Plaintiff's strongest claim, the regular rate overtime claim. Indeed, in the prior *Lopez* suit, it was the only claim the Court certified. At the time of mediation in this case, Plaintiff estimated Delta's liability for back wages and

interest on the regular rate claim, not including the Profit Sharing component,
at about $160.00 per class member for the then-estimated 3,078 class members.
Matern Decl. ¶ 17.[4] With the Profit-Sharing component, the estimated liability
for unpaid wages would be approximately $4.5M, meaning that the Settlement
provided approximately 78% of that potential liability. For purposes of
mediation, Plaintiff extrapolated from the sample data provided by Delta based
on a comparable violation rate. With a net settlement fund available for class
member settlement payments of approximately $2,046,477.52 and an expected
class size of about 3,382, the administrator determined that individual class
members will receive recoveries on average of $607.99, which represents almost
45% of the estimated "soaking wet" amount each of those class members could
have recovered had the Parties litigated the regular rate claim to a final
judgment, and that is *without* any deductions for fees and costs. Assuming a 1/3
fee, the recovery in this settlement jumps to 67% of the estimated amount each
of those class members could have recovered had the Parties litigated the
regular rate claim to a final judgment. Matern Decl. ¶ 18. This is nearly 80% of
what those class members could have recovered had the Parties litigated the
regular rate claim – the sole certified claim in the prior *Lopez* action– to a final
judgment.

Moreover, the $607.99 per class member estimate may overstate actual
recoveries available on the regular rate claim after judgment, because in the
related *Lopez* matter, the Court did not issue a ruling as to whether payments
under Delta's Profit Sharing Plan were properly excluded from its regular rate

---

[4] Back wages and interest on the regular rate overtime claim are inevitably
modest sums because employees are entitled to recover only for hours for which
they already received *some* overtime pay.  Back wages are determined by adding
the previously omitted forms of compensation to the regular rate and
recalculating the overtime owed, then subtracting any overtime premiums that
were already received.

calculations (*Lopez*, Dkt. 134 at 9), which suggested a significant risk remained as to the potential recoveries on the regular rate claim. The proposed Settlement is an excellent result because, (1) it fully compensates class members for their strongest claim, and provides additional consideration for penalties and for the other wage and hour claims that were pleaded in the complaint, and (2) did so in an expeditious and efficient manner, meaning the Class Members do not have await years of litigation, appellate review, etc.

As to the latter consideration, there is no reasonable dispute but that the delay and expense that would be incurred if the case is litigated rather than settled would be substantial, and a classwide recovery would be highly uncertain. As the *Lopez* case alone proved, Delta stood ready to aggressively litigate every claim and every issue if the case is not settled. Review would have been sought of the Court's rulings on certification as well as any substantive matters, and doubtlessly claims and issues would have required trial for their resolution, potentially including individualized evidence on damages. It would likely take years before Plaintiff could challenge the limits of the Court's class certification order on appeal, and even if Plaintiffs were successful, further litigation on Plaintiff's other claims on remand could take years. By contrast, the proposed Settlement, provides a substantial and immediate benefit to the class which is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

The proposed Settlement will benefit more Delta employees than this litigation could because it provides relief to non-exempt employees throughout the State of California which could not have been obtained except after extensive litigation including proceeding to certification with all its attendant risks, a complex trial, and potential appellate proceedings, or by filing another case with all the attendant delay and expense. The proposed Settlement takes these facts

into consideration, as well as the potential difficulty in establishing damages. Matern Decl. at ¶¶ 17-23.

Under the proposed Settlement, Participating Claimants avoid these risks and obstacles to recovery and receive substantial benefits immediately. Assuming that the Court approves the proposed allocations, the average estimated individual Settlement payment will be approximately $607.99, and the highest estimated individual Settlement payment will be approximately $857.97. Moore Decl. ¶ 13.

In sum, given the risk and uncertainty of continued litigation, this Settlement guarantees a substantial recovery for the Class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (ruling that "the [s]ettlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate").

### 2.    The Risk, Complexity and Duration of Further Litigation.

Another factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of this lawsuit had settlement not been achieved. *Officers for Justice*, 688 F.2d at 625. As explained above, Delta was prepared to vigorously litigate the case through trial and appeal, as it had signaled in the *Lopez* matter. Class Counsel has extensive experience in wage and hour class action litigation and knows that any case involving wage and hour claims against a major corporate employer can, and often does, lead to costly litigation that goes on for years.  Matern Decl. ¶ 20.

Absent settlement, the next steps in the case likely would include a motion for class certification, a motion for summary judgment by Delta regarding whether payments from its Profit Sharing Plan as well as other components of the regular rate claim were properly excluded from its regular rate calculations,

and the parties' respective efforts to obtain review of adverse decisions both at certification and in subsequent merits determinations on the myriad claims.

Thus, significant risk remained as to the potential recoveries on each of the claims alleged and considerably more risk, effort, time and expense would be entailed in taking these steps, all of which would cause significant delays in obtaining any relief for Class Members. *See In re Portal Software Secs. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

Accordingly, this factor supports final approval of the Settlement.

### 3.    The Risk of Maintaining Class Action Status Throughout the Litigation.

Plaintiff faced the risk that class action status, even on the one regular rate overtime claim, would not be obtained and even if it was, that it might be lost upon Delta's efforts to appeal. Even if Plaintiff was able to maintain class action status on any one claim, a determination would have to be made regarding how to handle damages determinations for the remaining putative class members. These risks in obtaining and maintaining class certification, and the uncertainty attendant to the further litigation of the partially certified claim favors settlement.

### 4.    The Amount Offered in Settlement.

The next factor relevant to a consideration of the reasonableness of the settlement is the amount offered by the defendant. As the Ninth Circuit has noted, "It is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."

*Officers for Justice*, 688 F.2d at 625. Rather, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at 624 (citations omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is…inadequate and should be disapproved.'" *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

The proposed settlement offers a substantial recovery to Class Members given the risks of pursuing this case through trial.  All Participating Class Members will receive a *pro rata* share of the Net Settlement Amount based upon the number of weeks they worked during the Class Period.  Ex. 1, ¶ 5.7.1. Assuming that the Court approves the proposed allocations, the average estimated individual Settlement payment will be approximately $607.99, and the highest estimated individual Settlement payment will be approximately $857.97.  Moore Decl. ¶ 13.

This is a significant recovery by any measure, but is especially so in light of the risks described above. A comparison of the average settlement award here to other actions in the Ninth Circuit for wage and hour violations highlights the significant success achieved by Class Counsel. *See, e.g., Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448-51 (E.D.Cal.2013) (court deemed recovery of $1,290,000 for 1,837 employees a "favorable result" and awarded fees amounting to 33 1/3% of the total settlement).  The Court should find that the results achieved on behalf of the Class through this Settlement are excellent.

### 5.    Extent of Discovery Completed and Stage of Proceedings.

Final approval is favored for the additional reason that substantial investigation and discovery were completed prior to mediation efforts and settlement, giving Plaintiff and Class Counsel a clear understanding of the strength and weaknesses of the case, and the risks of continuing to litigate. "'The

extent of discovery may be relevant in determining the adequacy of the Parties' knowledge of the case.'" *Nat'l Rural Telecomm.*, 22l F.R.D. at 527.  "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the Parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'" *Id.*  The more discovery that has been completed, the more the Parties have "a clear view of the strengths and weaknesses of their cases.' " *Young v. Polo Retail, LLC,* No. C 02 4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007).

As shown above, the parties agreed to a settlement only after engaging in informal investigation, discovery, and litigation. Matern Decl. ¶¶ 6-12. Given this, and in addition to the Parties' work in the related *Lopez* matter on related issues, meant both sides were well-informed regarding the strengths and weaknesses of their respective positions at the time the Settlement was reached, this factor weighs in favor of final settlement approval.

### 6.    The Experience and Views of Class Counsel.

The sixth factor considers Class Counsel's experience and views about the adequacy of the settlement.  Reliance on such recommendations is premised on the fact that "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific*, 47 F.3d at 378.

Class Counsel is qualified and experienced in handling complex wage and hour class actions and has litigated scores of class action lawsuits involving wage and hour issues in both state and federal courts. Dkt. 41, ¶ 6(d); Dkt. 39-8, ¶¶ 22-31; Dkt. 39-2, ¶¶ 4-17. Through their investigation, review of discovery materials, law and motion work and mediation, Plaintiff and Class Counsel have a comprehensive understanding of the factual and legal issues involved in this case and believe the Settlement is fair, adequate, and reasonable. Matern Decl. ¶¶ 20-23.  Therefore, this factor also favors final approval of the Settlement.

1    **7.    The Presence of a Government Participant.**

2        This factor does not apply because no governmental entities are involved

3    in this case.

4        **8.    The Class Members' Reaction to the Proposed**

5            **Settlement.**

6        The final factor in the Court's determination of the fairness, adequacy, and

7    reasonableness of the settlement is the reaction of the class to the settlement.

8    *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the

9    absence of a large number of objections to a proposed class action settlement

10   raises a strong presumption that the terms of a proposed class action settlement

11   are favorable to the class members." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528-

12   29.

13       Class Members' reaction to the Settlement has been extremely favorable.

14   Thus far, not a single Class Member has submitted an objection to the

15   Settlement, and only three persons requested to be excluded from the

16   Settlement. Moore Decl. ¶ 11. Given the overall positive reaction by Class

17   Members to the Settlement, this factor further supports settlement approval.

18   **VII.  THE COURT SHOULD APPROVE KCC's FEES**

19       KCC's fees in the amount of $45,000.00 are reasonable, given the tasks

20   performed and remaining to be performed. Moore Decl. ¶ 14. No Class Members

21   objected to the requested costs of administration. *Id.* Accordingly, Plaintiffs

22   request that the Court approve KCC's fees in the amount of $ 45,000.00.

23   **VIII. DELTA DOES NOT OPPOSE THIS MOTION**

24       Since this Settlement has been stipulated to, Delta has no opposition to

25   this Motion.  Matern Decl. ¶ 24.

26   ///

27   ///

28

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant final approval of the Settlement and enter the proposed Judgment against Delta in accordance with the terms of the Settlement.

DATED:  February 10, 2020

Respectfully submitted,

**MATERN LAW GROUP, PC**
Matthew J. Matern
Matthew W. Gordon
Scott A. Brooks

**ALTSHULER BERZON LLP**
James M. Finberg
Eileen B. Goldsmith

By: */s/ Matthew J. Matern*
         Matthew J. Matern

Class Counsel and Attorneys for Plaintiff Howard Fan